First case this morning is case number 4-17-0279. Genray, the Estate of Mary L. Bowers deceased. Appearing for the appellant is attorney Jonathan, is it pronounced Bobble? Bobble. Bobble, thank you. And for the appellee is attorney Mark Ansel. Good morning, gentlemen. Good morning. Mr. Bobble, are you ready to proceed? I am. You may. May it please the court, counsel. Again, my name is Jonathan Bobble. I'm from Livingston Barger in Bloomington, Illinois. Here on behalf of plaintiff appellants Stephen Phillips, Ann Bonnet and Susan Ottery. As the court knows, we're here following the trial court's grant, finding in favor of the defendant at the summary judgment stage as to counts 1 and 2 of plaintiff's complaint which alleges undue influence against the defendant, Jane Roden. And the court's subsequent denial of plaintiff's motion to reconsider that ruling. Those rulings were improper and should be reversed for two broad reasons. The first is that the plaintiffs here have very clearly established a presumption of undue influence. That's the most important point because I think once that presumption is established, summary judgment is not appropriate in the case law. We'll bear that out. Ever? I'm sorry? It's never appropriate? I think once the presumption of undue influence is established, I don't think summary judgment is ever appropriate. Even if the presumption here is not established, and I don't think the court will get this far in the analysis, but summary judgment was still improper because there are issues of contested fact and there are inferences which give rise to probable undue influence. Now, the first issue, and it's the one that I'll spend the majority of my time on, is the presumption of undue influence and whether that was established. As the court's aware, there are four elements required in establishing a presumption of undue influence. There's only one that's at issue here today. There was only one that was raised at the trial court, and that is the question of whether this beneficiary, under the will, participated in the procurement or the preparation of the will. I think a review of these cases will tell us that it's a fact-specific inquiry. There's no one thing that's going to tell us one way or the other whether the beneficiary was participating in the procurement or the preparation of the will. We cited five cases in our brief which I think support us, and those were Tidholm, Rossler, Schmidt, Swenson, and really I think the closest factually is this Jessman case, that's J-E-S-S-M-A-N. And in that case, we have a testator who's living with the beneficiary, just as in this case. The testator asks the beneficiary, make an appointment with an attorney. I want to prepare a state plan. They go to that attorney together. The attorney gathers information during the meeting for the will. The attorney mails a copy of the will to the home where the testator and the beneficiary are living together. A new draft is prepared following that. There's a second meeting. Again, the beneficiary drives to the meeting. And in this case, in the Jessman case, there's some question as to whether the beneficiary is present during the execution. In the case of Barr, I don't think there's any question that Jane Remden was present for that meeting. And I think it's important to note also in the Jessman case, the beneficiary has said, that the testator didn't, I'm sorry, the beneficiary didn't tell the testator to create a new will. She was just carrying out the wishes of the testator in arranging this meeting, driving her there, being present. And in that case, there was a presumption of undue influence established. That was enough for that court. The trial court granted summary judgment and said, no, there's no presumption established. The appellate court reversed. In doing so, the appellate court noted, summary judgment is particularly inappropriate where the inferences sought to be drawn by the parties deal with questions of motive, intent, or subjective feelings and reactions. Mr. Bowman, did you present the same argument to the circuit court, including specifically your citation to Jessman? I presented the same argument, Your Honor. I don't believe Jessman was cited. Okay. Thank you. The Jessman court also said that both parties sought to draw inferences regarding the intent and feelings of the testator from facts surrounding the will. Again, summary judgment was not appropriate in that case. Also, in the Maher case, it's just an issue of law that's cited in that case. The court says, the active agency of the chief beneficiary in procuring a will, especially in the absence of those having an equal claim on the estate of a testator whose mind is debilitated by age and illness, is a circumstance indicating the probable exercise of undue influence. So taking the Jessman case, the other cases that have been cited by plaintiff, and comparing those to the facts of this case, which are largely uncontested. These come from Ms. Grothen's deposition. They come from the deposition of Attorney Lot Thomas, who prepared the 2011 estate plan, which is what's at issue today. For about 20 years, Edward and Mary Bowers had three to four separate estate plans that were all prepared. They were signed by them. And in those estate plans, they provided for their grandson, Stephen. They provided for Ann Bonnet. They provided for Susan Ottery. And they provided for their daughter, Jean Rope, a defendant in this case. In 2011, the estate plan is executed 13 days before Edward's death at the age of 91. Mary was 88 years old at the time of the execution. We know that Ms. Grothen contacted Lot Thomas' office. She scheduled the meeting. We know that Ms. Grothen and her husband, Jerry, were both present for that initial meeting. Really, throughout this entire process of meeting with the attorney, gathering documents, looking at prior estate plans, Ms. Grothen was the conduit for all information that was coming between Attorney Thomas and her parents. Mr. Bobl, I hate to interrupt you. Just please bookmark where you're at, and you can go back to it. But I want to make sure that I understand the manner in which you believe the presumption works in this case. And then ask Mr. Ansel during his portion of the argument to address this same thing. If I understand your argument correctly, this is a rebuttable presumption at work. Once the plaintiff has set forth sufficient evidence to raise the presumption of undue influence, then it's incumbent on the defendant to rebut the presumption with evidence. And then if sufficient evidence is established rebutting the presumption, and that is a question of law to be determined by the trial court, the presumption vanishes, and the case proceeds simply to the trier effect to weigh the evidence. But as long as sufficient evidence has been presented to raise the presumption, that case is not susceptible to summary judgment. Is that correct? That is my position, Your Honor, yes. Okay, thank you. Even if it's rebutted? Yes, Your Honor. I think the issue of whether or not the presumption is rebutted I think is necessarily going to be an issue of fact. And in order to rebut a presumption, first you have to Well, let me stop you there. I thought the case law made it pretty clear that was a question of law. Because that's how a court determines how to instruct the jury, whether there's a presumption or whether the presumption bubble has been burst, and therefore just goes to the jury or the fact finder. I'm sorry. I misspoke on that. So you do agree it's a question of law? It is a question of law, whether the presumption can be rebutted. Well, at the summary judgment stage, then why, if it's a question of law, couldn't the court say, yeah, there was a presumption raised, but it's been rebutted at this stage? And then whatever evidence is left for you would be the misrepresentation argument. If that's not sufficient, why wouldn't summary judgment be appropriate for the defendant? Well, I think in this case, Your Honor, the strength of evidence required to rebut a presumption is going to depend on the strength of that presumption. That's throughout all of the case law. And in order to evaluate the strength of a presumption, you have to look at all four of those factors. So what was the relationship between the testator and the beneficiary? And that's one of the most important factors. That's under the Klein case. They say that. And so without really examining the strength of all of those and to say, yes, this is a really strong presumption or this is a weak presumption, we don't know what quantum of evidence is necessary to overcome that presumption. There was only one of those elements examined here. I think the trial court performed that analysis incorrectly in saying that there was no presumption. So I don't think that any of the four factors were properly analyzed to say what the strength of the presumption was. And so I don't think it's appropriate to say that any presumption could be rebutted. So even if the presumption is rebutted, it's the trial court making the determination as a matter of law whether or not the presumption is rebutted. The facts that have been presented raising the presumption don't just vanish. It's just simply the trial court's made the determination that the jury's not going to be instructed as to a presumption of undue influence. Those facts still remain. That's what I am assuming your argument is here. Even if the trial court correctly finds that the presumption has been rebutted, there is still a disputed issue of material fact. Those facts that went towards creating the presumption or raising the presumption in the first place still exist to be considered by the trier of fact. That's absolutely right, your honor, and that's what the Franciscan Sisters Court says. Once the presumption is rebutted, the inference still remains. So even if the presumption is rebutted, you still have an inference of undue influence. Have I answered the court's questions there? Okay, thank you. So again, back to the facts. We know that Ms. Roten was the conduit of information between her parents and Attorney Thomas. There are a number of contacts between Ms. Roten and Attorney Thomas. Some of them are mentioned in the brief. I won't go through all of them here, but there are a couple that I want to highlight. In a phone call, Ms. Roten for the first time explained to Attorney Thomas the quote-unquote reasons or stated reasons that Stephen Phillips, the grandson of my client, would be disinherited. And what Attorney Thomas' notes say is that the Bowers took care of Stephen's issues, meaning that they had loaned him money, some time back. And the reason why Stephen was still included in the May 2009 trust goes back to feeling that she had promised him that land. So this is Ms. Roten essentially explaining to Attorney Thomas why there's going to be this drastic change in the estate plan, before Edward and Mary have told him why there's going to be this drastic change in the estate plan. She also tells him, and I don't know whether this was during the same conversation or another, it's difficult to tell from the notes, but she tells him, my parents are going to be protective about saying much. So she's kind of tempering expectations to say, look, if you don't get the same story from my parents, it's because they're just being protective about what they want to tell you. And during this conversation, she makes no mention of all the reasons that come up later for the change in the estate plan. She just says, yeah, they took care of Stephen's issues some time back. She doesn't go into this incident that happened when Edward was in the nursing home, and there's some allegation that some papers were taken without their consent, and those sort of things. So another conversation between Jane and Attorney Thomas' office that I think is crucial in this case, is that Jane called Attorney Thomas' office and told his assistant that her husband should be named contingent beneficiary and that he should also be named successor executor. Now, this isn't just someone who's helping their parents, driving them to the meeting, that sort of thing. She is supplying a material provision of the estate plan, something that is going to be part of the estate plan. And under Tidholm's case, it's an Illinois Supreme Court case from 1945, there the presumption was established when the beneficiary is in the room and is writing notes to the attorney and says this is something that we need in the plan. So it's the same thing here. Jane's doing it through a phone call, there are notes of that phone call recorded. As I noted, plaintiffs have cited five cases in support of that issue. Defendants have cited two, which are Henke and Lemke, in support of their argument that no presumption of undue influence arose. I don't think either of these cases helped the defendant. As an initial matter, both of these cases were tried. They weren't summary judgment cases. The Henke case actually supports the plaintiff on this issue as to whether a presumption of undue influence was established. In that case, after trial, the court found that the presumption of undue influence had been established when the beneficiary drove testator to the attorney's office and was present for discussion about testamentary plans. In Lemke, the court found there was no presumption, but in doing so, stated, the only evidence of the beneficiary, his name was Benke's involvement in the making of the will, was retrieving the old will, making the appointment, driving the testator there and being present when the will was discussed. That's not the case here. The involvement in that case is much less intimate, much less intensive than the case at Barr, in Ms. Roten's involvement, who essentially explained over the phone why her nephew would be disinherited and also supplied material provisions of the will in addition to all the other facts that are set forth. I think it's also important to note in the Lemke case that one of the other elements required for presumption of undue influence was not met. The beneficiary there did not receive a substantial benefit under the will. There was some benefit, that's why it was a challenge, but the court said there's no substantial benefit under the will. And again, in both of these cases cited by defendant, there's a trial. And so after the trial, find the presumption of undue influence. Defendants go on to say... Wasn't there a directed verdict in the Lemke case? Wasn't there a directed verdict in the Lemke case? Yes, Your Honor. I believe there was. Did either Jessamine or Tidholm cases you cited involve the court of review finding a presumption of undue influence? Tidholm's the Supreme Court decision, Jessamine's the Fifth District case. Judge, my recollection is that in both of those cases, the appellate court found that there were genuine issues of material fact as to whether or not a presumption had been established. I don't think that there was a finding per se that a presumption had been established. The defendants go on to argue, even if there was a presumption, it's been rebutted. First, I note that the trial court didn't make a clear finding on this issue. And I think what the trial court says is to the extent there's some faint suggestion of a presumption, it's been rebutted. But more importantly, the evidence required, and I addressed this with Justice Turner's question, the evidence required to rebut a presumption depends on the strength of the presumption. And that strength is going to depend on the evidence supporting all four factors. And again, the case law says the relationship between the testator and the beneficiary is especially important. Counsel, your argument is that it has to go to the fact finder when there's a presumption raised, and yet there's a directed verdict in one of the cases that you just spoke about. Now, how can that be? How's that consistent? Well, Your Honor, I think if we look at the Franciscan Sisters case, which is an Illinois Supreme Court case from 1993, what it says is that once you have a presumption and that presumption has been rebutted, the inference remains. So the court then that issued the directed verdict at the close of the defendant's case made an improper ruling? Yes, Your Honor. And I would just note the defendant has cited zero cases, and I could find none, where at the summary judgment stage the court found a presumption and then found that presumption is rebutted. Again, I don't think it's a proper issue. But even if it is a proper issue, pursuant to adjustment, summary judgment is particularly inappropriate in determining issues of motive and intent. The fact that Edward and Mary stated their intentions to Attorney Thomas isn't convincing evidence that would rebut a presumption. Under adjustment, in fact, the testator said, I don't like this person, I'm disinheriting. And the court still said there's a genuine issue of material fact as to whether the presumption has been raised and found that the trial court improperly granted summary judgment. And again, these statements by Edward and Mary, it also, if you look at the Hoover case, another Illinois Supreme Court case, or if you look at the nature of an undue influence case, in these cases we're looking at someone's will being overcome or overborne by another. These testators aren't going to walk into the attorney's office and say, well, we'd really like to give the farm to our grandson Stephen, but Jane here has made other plans for us. Because their will has been substituted for another. They've been sort of injected with these ideas about what they want. They're 91, they're 88. Sort of the final layer to this presumption argument is that even if it's rebutted, which, again, I don't think is a proper question at this point, there are still material issues of genuine fact. Thank you. Thank you. We'll have time in rebuttal. Mr. Hanson? May it please the Court, counsel, I am Mark Ansel. I'm so sorry. I am Mark Ansel, and I am representing the defendant, Jane Roten. And I'm also representing the defendant, Sharon Roten, and I must make a quick comment for the cleaning of the record here on Sharon Roten. She was sued along with Jane. Sharon Roten is Jane's mother-in-law, the mother of Jane's husband. And in that lawsuit, all the way through to the end, there was argument about Jane unduly influencing, as well as Sharon unduly influencing. There was evidence of Jane's role in bringing her parents to talk to Locke Thomas and in the participation on the presumption vis-a-vis Jane. That evidence will be addressed in a moment. But there was zero evidence about Sharon Roten participating in procuring the will, other than that she recommended Attorney Locke Thomas. At the end, when the Court granted summary judgment, it was in favor of both defendants. The appeal, apparently from the notice, did not distinguish, so I'm assuming that there's an appeal on behalf of Jane and Sharon. But the brief of my opponent makes it clear. He never discusses Sharon or her role or any evidence. Sharon should be, the summary judgment vis-a-vis Sharon, must be affirmed on this record. In a footnote, doesn't the opponent acknowledge that the appeal does not pertain to Sharon? Perhaps he did. I shouldn't have wasted my time. I'm very content with that. However, there is something I should say about Sharon, in that her testimony in deposition was a part of the summary judgment motion. And there's one aspect of her testimony in the record that I would like to read to set this up and then to talk about the evidence in this context. Sharon testified, and this is at, I'm sorry, the common law record 910 and the appendix 332. She was asked, So were you upset with Ed and Mary about deciding to give all the farmland only to Jane? Yes. Why? Because I didn't think they should do it. Why? Because Ann and Sue was their kids too. Did you talk to them? Yes. What did they say? Now, this is what did they say to Sharon. It doesn't matter what I thought. What Ed and Mary the testator said to Sharon was, We don't care what you think. This is consistent with some descriptions of the character and personality and insistence of at least Ed. What made them do it then? Well, Ed told me. He got out of the nursing home. He saw his papers were missing. Mary told me that the girls had taken it. She was mad. And he said, I'm going to change my will. Did you also talk to Mary? Yes. What did she say? She was wanting to do it too. I only read that to you because it reduces to a nutshell what this case is about and what the evidence is. Undisputed. I will explain that evidence and why it's undisputed, the material facts, in a moment. But I first must say, and I am pleased, that this question of what is the role of the presumption in this case is, as the court has questioned my opponent and demonstrated what I think is a fundamental misunderstanding on his part. To argue that the presumption once made requires this to go to the jury is wrong in at least two particulars. The first is, as Justice Turner said, and I think I heard Justice Harris maybe, if rebutted, the presumption disappears. It's gone. It's not an issue. It alone cannot take the case to the jury. Once rebutted, as Justice Harris said, the court can still look at that evidence but must look at it with a different eye. Not the question of whether there's a presumption established. Not the question of whether or not the defendant participated in procuring the will. Now the question is whether that evidence establishes undue influence. This has been said clearly in the cases. I'll quote first from Klein. Once the presumption has been rebutted, the plaintiff must then rely on specific evidence of actual influence. Undue influence must be directly connected with the execution of the instrument operating at the time the instrument was made. So yes, the evidence remains in the record, but its strength might vary. What is that participation? In this case, the participation is weak on the question of undue influence. You didn't address Jessman in your brief. Jessman's the Fifth District case. It seems like the facts supporting the appellate court's reversal of summary judgment in that case, establishing undue influence, are weaker than the facts presented by the plaintiff in this case. How do you see that? Well, I see it in two ways. The first way is that sometimes the case is also confused. The analysis of the evidence in establishing the presumption and the analysis of that same evidence in proving undue influence. The cases aren't always as clear as they can be, and I think the Fifth District's case was not at all clear. If they think that evidence of participation is sufficient without looking at its character, as my opponent actually is arguing here, this is incorrect law. And it's incorrect law because logically it cannot be true that a presumption can be established and disappear and still play a role in proving the case. The evidence must be looked at with a fresh eye on a different issue. How do you explain the Franciscan Sisters case, which counsel decided, which speaks about when the presumption is gone, then it's still a question for the fact finder? I think as a general rule, this is true. Once the presumption's gone, the court must look with a different eye on the question of whether undue influence is proved, or at least a prima facie case of undue influence. And that is a question of fact in general, but each case must be looked at on its own. And the trial court in this case, when it looked, couldn't see any evidence of undue influence. And here's why, and here's what the plaintiff's evidence was. Same evidence to establish the presumption. Participation in procuring the will. Her participation, Jane's participation, was driving her parents there. Setting the appointments. Talking to the attorney, Lot Thomas. She was clearly a fiduciary. We never disputed that she was a fiduciary. We never even argued whether the presumption was established and burst, because there was never any question that the presumption was burst. Was there ever a question from the defendant's standpoint that the presumption existed? Well, we didn't concede the presumption, but we said that it was immaterial because it was rebutted. And once it is rebutted, it disappears. Well, you can't have a rebutted presumption without a presumption. That is correct. And if you allow the advocacy, we argued in the alternative. There's no presumption. If there was, it's rebutted anyhow and disappears. And we didn't emphasize and make this the issue because, as I said, no credible argument can be made that it wasn't rebutted. The defendant's evidence of lack of undue influence was overwhelming. The presumption is gone. It's been rebutted. Now we are in a regular case of weighing the evidence and identifying disputed issues of material value. A summary judgment case involves weighing of evidence by the judge? Well, I'm sorry. I'm sorry. It doesn't involve weighing, and that's the wrong word. But it does involve looking at the evidence to identify material issues. Let me now identify those for the Court to demonstrate that there are no disputes. I'm material issues. Well, before I do, I need to get back to this question of Jane's participation and whether it's probative at all of undue influence. As I said, Jane was a fiduciary. The record shows that Jane was asked by her parents to move back to central Illinois to care for them in their final years. And she did move back, and she lived there, and she took care of them. They couldn't drive anymore. She drove them. She helped them with their paperwork. She helped them with their shopping. I think the point on this kind of participation is it is so natural. Should there be an adverse influence on the substantive issue of influence by the fact that she drove them because they couldn't drive on their own? Jane was doing her job. Jane didn't say, oh, I better not drive you. Jane's not a lawyer. She did her job. But here's the key. Locke Thomas did his job too. Locke Thomas is a lawyer. And the evidence is undisputed that he asked Ed and Mary multiple times what their reasons were. He asked Jane to leave from time to time to ask them alone what their reasons were. But isn't the defendant's point that the question of fact that they're pointing to is what led them to give those reasons to Locke Thomas? Yes, and now I will respond to that issue. There are two kinds of influence in the case law. The first is, Mom and Dad, you should leave everything to me. You should leave nothing to them. And here's why. The person who lives there, who has the chance, there is no evidence whatsoever of that. But there is a second line, and it's the Hoover line. It's the secret influences line. The secret influences line, and Hoover says these secret influences, are actually secret from the testators. The defendant says, Mom and Dad, he shouldn't be dissing you like this, pointing to her sister or her brother. He's evil. He's wrong. He's a terrible son. And Mom and Dad become estranged and on their own decide to rewrite their will. Not that the defendant said, I want you to leave everything to me, but they were in a campaign of assassinating the character of their siblings or the heirs or whoever they may be. A reading of the Hoover case and all the cases that have been cited, there's only one or two since, have explicit evidence of character assassination. Letters that the defendant was writing to her parents that said, he's a bad son, she's a bad daughter. There's no evidence in this case, as the court has said, there's no specific evidence of actual undue influence here. Whether that influence is overt, leave everything to me because, or whether that evidence was secret, I'm the good son, he's the bad son, you see that, don't you? There is no evidence of that. And the question of whether or not the circumstances establishing the presumption can also support or create a prima facie case of undue influence is the question. They cannot. The trial court said that. There was a lot of time wasted in this case by my opponent in arguing that their reasons for why they were leaving this, their reasons that they repeated to many people over many months, including directly to Lott Thomas alone, that those reasons were wrong. They were mistaken. This didn't happen. This didn't happen. You know, I have to say, if they believed it happened, that's the material fact. If those are their reasons, with one exception, if they were mistaken, was it because of Jane's influence? There is no evidence that Jane planned these facts. In fact, the affidavits of my opponent establish that most of these things, these offense are true. The loaning of money to their grandson that wasn't fully paid back. The taking of private papers from Ed's file that he was so angry about. The attempt was to whether it was $80,000 or $200,000 and where that figure might have come from. I can help with that because a close reading of the record makes it clear. In 2005, there was $85,000 paid on Stephen's debts. And Stephen himself in his affidavit itemizes that. But that wasn't all the money that they did on behalf of him. That wasn't the attorney's fees that they paid for the DUI. That wasn't other things that they did for him. And that was in 2005, not in 2010. And by the way, if Ed was mistaken when he thought that probably it's $200,000 and all it was was $85,000, does that mean that, Oh, $85,000, I'll still leave him my whole inheritance. Or does that mean that Ed was to the point? Well, counsel, I thought there was a letter from an accountant that basically suggested that the amount was over $190,000 that was owed. There was, and that was a later letter after additional financial support and assistance was provided by Ed and Mary. Well, let me ask you this. How did you get around this rather broad statement from the Supreme Court in Des Hartes? A presumption of undue influence is something that can only be ultimately determined at the earliest after the close of the plaintiff's case. How did you get around that? That wasn't a summary judgment. In that sense, that was a 2-6-1-5 motion to dismiss, wasn't it? Yes, but it wasn't. The Supreme Court, I would think, could understand that there could be a situation where it's not dismissed, where discovery has gone on for three years as it has here, and then a summary judgment motion might be filed, and yet that is a direct quote from what our Supreme Court stated in Des Hartes. I know. I would have to say that it obviously has to be dictum because that record was not this record. That was a motion to dismiss. There was no reference or footnote to say, P.S., maybe it's a summary judgment. Dick, is that a euphemism or the Supreme Court was just wrong? No, I think it was a euphemism for the Supreme Court making a broad generic statement as if there could never on any record, different record, be an exception. I mean, if we can't take evidence, all the evidence, and say there's no issue of fact here. Okay, so if I'm following, you disagree with one of the first questions I asked Mr. Bogle. Can there ever be a summary judgment when there is a presumption of undue influence? He said no. You disagree with that? I disagree with that. I don't know that on that specific issue, no court, not the Supreme Court, has ever said. Ordinarily, you can look at the evidence as a trial judge and make a determination that there's no question of fact in dispute here, but not in these kinds of cases. And he says in his brief, I think it's his reply brief, that you have not cited one case where that has ever occurred. Would you be the first court to do that? I have not and my opponent has not found a case where procedurally it's in this posture. In an undue influence case where there was a presumption that was clearly rebutted and summary judgment was granted. Mr. Ansell, I'm not sure that you said this, so I just ask that you clarify. Are you saying that the quality of evidence necessary to raise the presumption of undue influence is different than the quality of evidence later to prove undue influence, whereas in the former, in terms of raising the presumption, then it might be evidence of the actions taken by the beneficiary facilitating the change in the testator's estate plans and so forth. But that evidence, the quality of that evidence would be insufficient to later prove undue influence, which would require something else, evidence that would demonstrate the beneficiary's disparagement of other beneficiaries, actions taken to actively influence the substance of the estate plan. Is that your assertion? I think it is with one qualification. What I'm saying is that the evidence necessary or sufficient to raise the presumption is not necessarily sufficient to support an inference of undue influence. You must look at it through a different eye and determine whether it is sufficient to raise the presumption of undue influence. Otherwise, what's the purpose of a presumption? The purpose of a presumption is you don't have to prove your case. All you have to do is come forth with some elements that we're going to make the defendant step forth and respond to. So I'm going to say that that evidence could be sufficient to create a question of fact, that evidence that supports the presumption. But it could also be insufficient to create a question of fact on the material issue. And in this case, it is insufficient, and the trial court found it was, and the trial court is correct because there was no evidence, I repeat from Klein, once the presumption is rebutted, the plaintiff must rely on specific evidence of actual undue influence that must be directly connected with execution of the instrument and the operating at the time it was made. That is a higher standard. Sometimes the evidence of participation can come to that standard, but not in this case. Not when it was entirely natural for the person who moved back in with her parents and the only one living in the area and the one who was driving them around because they couldn't drive and the one who was dialing the phone for them did all of this. It's so natural. It's benign. It's not as if they were sneaking out the basement door with the brothers and sisters upstairs to go to the lawyer's office. It was natural for Jane to do what she did, and she was doing her job. I can only conclude by saying that Locke Thomas did his job, too, and Locke Thomas made sure that it was their will and their wish without influence. Thank you, Mr. Hancock. Thank you very much. Mr. Boval. Mr. Boval, so I don't have to interrupt you after you've started. Thank you. Am I to understand, regardless of what this court rules, there are still eight counts pending for the trial court? There are. Those counts are unrelated to the issue of undue influence. There are some other issues between Stephen and Jane, the estate. So, yes, there are still issues pending. Okay, thank you. Just a few issues on rebuttal. The first is with respect to Sharon's testimony. And, again, like the testimony of Locke Thomas, this isn't convincing because, as the court has pointed out, what led them to make these statements? Where did those statements, those beliefs come from? And I think it's easy to make that inference, it's reasonable to make that inference, that it was something that was internalized by Edward and Mary from Jane. This issue of what happens if there is a rebutted presumption, which, again, I don't think that we can find that the presumption has been rebutted at this point for a variety of reasons. But if it is, the Franciscan Sisters case, which is a Supreme Court case, has told us what happens. They say the trier of fact must outweigh the evidence and consider any and all reasonable inferences that can be drawn from these facts, including the possible inference of undue influence. The rebuttal will cause the presumption to disappear, but will not preclude the fact finder from drawing the inference. The Court is well aware at the summary judgment stage, all inferences are drawn in favor of the non-movement, non-movement in favor of the plaintiff here. And the Hoover case is also an important case here, because what it says is that these cases can be proved by circumstantial evidence. They can be proved by inference. There's not always a smoking gun. And, you know, Mr. Ansell said, well, maybe Edward and Mary, you know, if they're mistaken, why are they mistaken? And I think if they are mistaken as to certain facts that they're stating, then it's certainly reasonable to draw the inference that they're mistaken as a result of Jane. And that's looking at this case as a whole, where we have a history of 20 years of estate plans, where they're doing one thing, and now in the months before the death of Edward, they're doing something completely different. They're cutting out two daughters and their grandson, who had farmed the property for years and years and years. So it's a drastic shift. And I think that those facts, coupled with the facts of her execution, her involvement in the execution of the will, clearly point to inference of undue influence, even if there is no presumption. Well, Mr. Ansell quoted from a case, I think it was Klein, at the conclusion of his remarks, but in any event, suggesting that the quality of evidence necessary to support a finding of undue influence by the nature of actual influence, something that was done on a qualitative level to change the testator's estate plan, as opposed to evidence that might have been just simply that the beneficiary facilitated meetings with the attorneys and so forth. Is that, in your view, is that an accurate statement of the law? No. I don't think that there has to be something separate from just those facts. Those facts themselves, the facts of this case, can create an inference. But even if we do need something else, I think it's there. We've alleged that Jane made misrepresentations about a variety of things, including the fact as to how much Stephen owed, this issue whether or not he tried to access the safe deposit box. I see my time's running short, so not to get into that. But all of those things, there's enough here to create an inference, even if there's not a presumption, which I believe there clearly is. One other issue is that Mr. Ansell indicated that Lot Thomas met with Edward and Mary alone. There's no direct evidence of that. He said on deposition that, I believe it occurred, but I can't tell you for certain that it occurred. He also said that, well, I usually have an engagement letter. I didn't have one here. So I think it's reasonable to infer that he didn't do one thing in line with his customs and practices. He didn't do another thing in line with his customs and practices in meeting with them alone. There's no notes indicating he met with them alone. So that's just one other factor that plays into whether or not the presumption was established. I thank the Court for your attention this morning and your time. Let me ask you to reverse the tripod. Thank you. Okay, thank you. Thank you, counsel, both. A very interesting case. The case will be taken under advisement and a written decision.